Please be seated. Thank you. Will the clerk please call the first case for the morning? After 119-015-377-C, Christopher Johnson. Johnson. Good morning. Good morning. May I please reserve four minutes for rebuttal? We're going to give you five this morning.  We're feeling generous. Thank you. Thank you. Please proceed. Thank you. May it please the court, good morning. Counsel for Greyhound, my name is Mark Slavin, representing the employee, Mr. Christopher Johnson, in this important matter.  When the commission reversed the arbitrator's denial of benefits and found that Mr. Johnson suffered from an occupational disease because of his toxic exposure at work and was ultimately fired by Greyhound because they could not accommodate his need to avoid ubiquitous elements and compounds which trigger his illness, whether the denial of vocational benefits is against the manifest weight of the evidence. The record that has been made is unequivocal. Mr. Johnson has been diagnosed with moderately severe reactions to cobalt, fibrom, nickel, and cobalt. The expert that the commission adopted is Dr. Sheehan, who was the IME physician for Respondent, who they found, the commission found, as credible. And it was Dr. Sheehan, without question, who said these elements are ubiquitous. It is everyday life that you are in contact with. So what the commission, now I understand the difficulty I have before you is to establish by the manifest weight of the evidence that the commission's decision was wrong. And in my 30 years' experience, I see and I hear your argument all the time about asking the deliberative body to pluck and choose different testimony in the record and actually engage in weighing of the evidence. This record is quite unique, and my argument does not ask you to do that. My argument hones on and relies on and adopts the commission's decision substantially and relies on Dr. Sheehan, who the commission found to be reliable and credible in articulating their findings. Who's Dr. Leikin? Dr. Leikin was an independent medical evaluator. He was a defense doctor, and it was not cited by the commission. He was an independent medical who said that he is afflicted. He found that he was severe and moderately reactive. So what the commission decision did is as follows. The reason why we're here. They say that on page 6 of the decision, in the record, page 1,460, petitioner failed to prove vocational rehabilitation is warranted as the commission finds petitioner's only work restriction relating to the May 29, 2011 work accident is the requirement that petitioner wear appropriate vinyl gloves. It shouldn't be lost on us what the inciting accident was. A cascade of human feces, urine, whatever fits down a greyhound tank involved him, and he became severely reactive within days. And medical treatment and help ensued regularly and often, and identified the blistering nauseousness, the reactivity, where ultimately Dr. Sheehan says he is moderately severe, restricted. And again, what the commission pointed out is that his only work restriction relating to that incident is the requirement that they wear appropriate vinyl gloves. I guess to pin down here, the commission found that his contact dermatitis condition was causally related to the work, correct? Correct. They found that his gastroenteritis was not causally related to his work, correct? You are correct. Okay. Who's Dr. Canaver? Canaver was my retained expert that the commission rejected as not believable and credible. And that's why I wanted to rely on Dr. Sheehan and the commission's decision. Wait a minute. Maybe I'm missing something. You're quoting Canaver as your doctor. Didn't Canaver also say that any causal connection would have ceased just after a few months? She also opined that subsequent complaints of gastroenteritis were most likely attributable to the claimant's use of antibiotics that he received for dental work. So how does that help him? No, no. I am not right now talking about the gastroenteritis, which is not the paralyzing event that brings us here. What brings us here is the fact that when you open up that door, that contains an element and a compound that my client can't touch without vinyl gloves. Okay. Your client's suffering, which you're asking us to focus on now, is the contact dermatitis. Yes. The contact dermatitis, which we're blistering and pervasive in his body. He says it hurts. Of which we have four elements that have been testified to as ubiquitous in the environment. And that there is a question as to the nature and extent of the severity of the condition of your client. Is there any difference in the evidence as to the nature and extent? No. Because it's 100% that the reactivity was guaranteed. It is ironclad, moderately severe reaction. And that's what the commission, that's why I want to point out to the commission's decision. Because they rely on Dr. Scheman on page three of their decision who said, Dr. Scheman determined that petitioners should restrict exposure to metals. Restrict exposure to metals containing nickel and cobalt. And he also concluded, should avoid contact at work with rubber, which contains carbamates and thyriums. Scheman advised the petitioner to wear vinyl gloves at work, as Dr. Martini recommended. That's the point. As I point out in my brief, as this record is strong, the respondent called, Greyhound called their garage manager, David Ortega, as a witness in this case. David Ortega says on record site C214, and your understanding was Mr. Johnson was not able to return to work solely of the gloves. Answer, no, not solely, but due to the gloves. They terminated him because when he came back to work wearing these vinyl gloves, it was still in he was still in contact. Counsel in the brief says, and quotes Dr. Scheman again, and this is what he is, Dr. Scheman explains his brief of Greyhound, page 9, explained that the complete avoidance is not only unnecessary, but impossible, considering ubiquity of these chemicals. He testified, just as likely to come into contact with allergens in his normal daily life as he would in any kind of workplace, since the allergens are common in the surrounding which the general public lives and works. That's why he needs vocational rehabilitation. They fired him because they couldn't accommodate it, because the reactivity he was experiencing wearing gloves wasn't helping. It was not helping. Then I rely on who the vocational expert is for the respondent that the commission found more believable than my expert. Fine. It's weighing the facts. But I need to go and talk to you, mention quickly, about what their expert found. And I have it right here. Tiffany Brown writes. Excuse me. Excuse me. Well, just before you get to that thought, it's my understanding that when this case was before the arbitrary, TTD was an issue? Yes. And penalties were an issue, and vocational rehabilitation was an issue? As well as accident and exposure. We understand that. But when I look at the decision of the commission, the commission did not rule on TTD. Made no ruling on TTD. It remanded the matter back to the arbitrator for proceedings consistent with their decision. What jurisdiction did the circuit court have over this case if it had been remanded for factual determination? The answer is none. None, but it wasn't a factual determination. It's a matter of law that I was seeking because he attained maximum medical improvement, not TTD. Hold on. Hold on. TTD was an issue. The commission did not rule on TTD. They remanded it back to the arbitrator for a decision consistent with their decision. The arbitrator would have to first rule on the unanswered factual question. Whether he's entitled to TTD, and if so, how much? And the only thing they remanded it back for, they said he was entitled for reasonable and necessary medical expenses. They never ruled on what those expenses were. They did not. I agree with you. Even when they remanded it back, if they remanded it back to the arbitrator for factual determinations, it is not a final order of the commission, and the circuit court has no jurisdiction over the case. Could you answer that? I am not dumbfounded by your observation. I've heard you articulate that for many years, and I don't agree with it. And the fact of the matter is that you don't agree with it. Excuse me. What don't you agree with? Because what happened was when the commission says that there is occupational disease and exposure and no vocational rehabilitation, I mean, this is a remedial statute, and jurisdiction attaches to that conclusion that my client has had maximum medical improvement. TTD is not. Also, the commission's order doesn't have to be final for it to be appealable to the circuit court. The issue that we are litigating is final. No, no, excuse me. Issues aren't final. Cases are final. The case is not final? I agree with you.  Issues. Issues. I welcome your thought. I understand that there is not a ruling on the entirety of the case. But then with that said. We can't have piecemeal appeals in this system. That is the issue. It's not permitted under the statute. I understand. I look forward to then receiving your remand order so that further proceedings can be had. And then we're stuck with law of the case, though, and then that same issue is going to be brought up on the vocational rehabilitation. Why would you be stuck with law of the case if no final order was on it? In order for law of the case to apply, the order has to be not only final, it has to be appealable. Thank you. You are correct. I have no further argument to make. Thank you. Counsel, would you like to respond to the issue that's been raised to Esponte by the bench? That you're also stuck with it? In its mandate to review its own jurisdiction? I am not here to respond to that. I think you have to stand up and talk into that thing so that it can be recorded. It's recorded. That's what the microphone is for. The issue that's been raised by the court is not the issue I would be ordinarily standing here responding to. My argument focuses entirely on the merits of the case. Do you have a position on this jurisdictional question? I think that since the commission did not determine TTD, then I agree. It is not a final order. However, I do think that if we were to go down that road, we would be stuck with the same issues here because the commission would likely make the same determination based on the law of the case, find that the claimant is not entitled to TTD as they found he wasn't entitled to maintenance benefits. So likely is not good enough, whether they would likely, and it doesn't evoke jurisdiction. We either have it or we don't. Which is? I agree. I don't think you have jurisdiction for this. Did you raise it? I did not. At any stage? I did not. Okay. I raised the issue because this commission's decision is rather strange. It is a review of a 19B proceeding. A 19B proceeding in which you requested TTD. Is that correct? In which the plaintiff requested TTD. The plaintiff requested TTD. Excuse me. It was temporary benefits. They're due. TTD is checked. Should penalties be set? Now, the commission found that no maintenance or vocational rehabilitation was done. But it made absolutely no ruling on the TTD question. And then it says, remains the case of the arbitrator for further determination of further amount of total disability, temporary total compensation. That's in the first paragraph. But in the last paragraph of the opinion, it says they remanded to the arbitrator for further proceedings consistent with their decision. And if it's consistent with their decision, then somebody's got to decide what are the reasonable and necessary medical expenses, dollar amount, and what is the TTD, if he's entitled to it, and how much is it? Now, when you remand under Thomas on a 19B, you're only talking about TTD from arbitration forward. You're not talking about arbitration backwards. In this particular case, I don't see how this is a final order. The commission awarded reasonable and necessary medical benefits. I think that aspect of the decision was final. We've got two aspects. We don't need to show a deal. Everything has to be wrapped up with a bow around it for review by a reviewing court. If I say to you, pay reasonable and necessary medical expenses, how much money are you going to pay? This was exactly my problem in trying to pay the medical bills after we received the award. But the arbitrator did give a date of MMI, so we determined that was when the medical expenses incurred through that date is what we ended up determining. Well, how do we know that they're either reasonable or necessary unless we know what they are? And in this particular case, we don't know. There is no itemization of the actual reasonable and necessary medical expenses in the commission's decision. And that's why it should be remanded to the arbitrator to make that determination. That's exactly what they did. The TTD that was awarded by the commission, though, is in the order. Where? Well, they gave a credit for the TTD that was paid. They gave credit, but we don't know how much. Well, I tell you what, these are thoughts for you, both counsels and all around, and we won't be staying away from your time. Thank you. Okay. Thank you, counsel, both. At this point, we'll proceed to the second case in the morning.